1  THE LAW OFFICES OF GARY W. GORSKI
   Gary W. Gorski - SBN: 166526
2  usrugby@gmail.com
   Tel. (916) 965-6800
3
   Co-Counsel
4  CC WEAVER & ASSOCIATES
   Craig C. Weaver - SBN: 264571
5  P.O. Box 2275, Folsom, CA 95763
   Tel. (916) 941-5184 | Fax (916) 404-4867
6  craigcweaver@ccweaver.com

7  THE LAW OFFICE OF DANIEL M. KARALASH
   Daniel M. Karalash - SBN: 176422
8  dankaralash@gmail.com

9  LAW OFFICE OF DUSTIN MACFARLANE
   Dustin MacFarlane - SBN: 262162
10 dustin@macfarlanelegal.com

11 LAW OFFICE OF BRIAN KENNEDY
   Brian Kennedy - SBN: 247961
12 brian_kennedy6@yahoo.com

13 Attorneys for Plaintiff

14

15              THE UNITED STATES DISTRICT COURT
16
            IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA
17

18 THOMAS JACOBS,                    )   Case No.
                                     )
19           Plaintiff,              )   COMPLAINT FOR MONETARY
                                     )   DAMAGES, DECLARATORY AND
20      vs.                          )   INJUNCTIVE RELIEF
                                     )
21 CITY OF SAN JOSE MAYOR CHUCK REED,)   (42 U.S.C. § 1983)
   in both his individual and official capacities; )
22 CITY OF SAN JOSE; COUNTY OF SANTA )   DEMAND FOR JURY TRIAL
   CLARA; CITY OF SAN JOSE POLICE CHIEF )
23 ROB DAVIS, in both his individual and official )
   capacities; COUNTY OF SANTA CLARA )
24 SHERIFF LAURIE SMITH, in both her )
   individual and official capacities; and STATE )
25 OF CALIFORNIA ATTORNEY GENERAL )
   EDMUND G. BROWN, in his official capacity, )
26                                   )
             Defendants.             )
27 _____ )

28
                              - 1 -
   _____
         Complaint for Monetary Damages, Declaratory And Injunctive Relief
                      And Demand For Jury Trial

## COMPLAINT

**COMES NOW** Plaintiff Thomas Jacobs ("Plaintiff" or "Mr. Jacobs") by and through his attorneys of record, and complains of City of San Jose Mayor Chuck Reed, the City of San Jose, the County of Santa Clara, the City of San Jose Police Chief Rob Davis, the County of Santa Clara Sheriff Laurie Smith, and the State of California Attorney General Edmund G. Brown ("Defendants") as follows:

### JURISDICTION AND VENUE

1.    Jurisdiction of this action is founded on 28 U.S.C. § 1331 in that the action arises under the Constitution and laws of the United States of America, and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2.    This Court has supplemental jurisdiction over Plaintiff's state law claims asserted herein under 28 U.S.C. § 1367 because such claims arise out of the same case or controversy as the federal claims.

3.    Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

4.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1), whereas all Defendants reside in the State of California and Defendant Edmund G. Brown resides in this judicial district.

### THE PARTIES

5.    Plaintiff is a competent adult, natural person, and citizen of the United States of America, residing in the County of Santa Clara, City of San Jose, State of California.

6.    Plaintiff is a card-holding member of the National Rifle Association (NRA).

7.    Plaintiff is an avid sportsman and is familiar with firearms and the operation thereof.

8.    Plaintiff presently possesses a valid hunting license in the State of California.

**- 2 -**

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

9.  Plaintiff presently owns multiple firearms, and possesses them within his home, for both sporting use and self-defense purposes.

10. Plaintiff presently intends to obtain a license to carry a concealed weapon ("CCW") permit from either the County of Santa Clara or the City of San Jose.

11. Plaintiff desires a CCW permit so that he may possess a concealed handgun on his person to protect himself, his family, his property, and his friends in his home, his vehicle, his recreational vehicle (RV), while camping, while hunting, and while performing various other activities such as carrying large sums of money associated with his work.

12. Moreover, Plaintiff specifically has concern for the safety of himself and his family because in 1999 his home was broken into in broad daylight and his daughter came home while the burglars were still inside the home.

13. Plaintiff presently intends to exercise his constitutionally guaranteed right to self-defense both inside and outside of his home.

14. Plaintiff has unconstitutionally been prevented from doing so because of the code sections challenged and complained of herein, and because of Defendants' unconstitutional application and enforcement of those same sections.

15. Plaintiff fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess a concealed weapon on his person, in his vehicle, or in his RV without a permit authorizing him to do so.

16. On multiple occasions Plaintiff has attempted to apply for a CCW permit with both the County of Santa Clara Sheriff's Office and the City of San Jose Police Department.

17. Beginning on or about September 15, 2009, Plaintiff began calling both the County of Santa Clara Sheriff's Office and the City of San Jose Police Department inquiring about the respective departments' CCW application processes and issuance policies.

18. Beginning on or about September 15, 2009, each and every time Plaintiff telephoned either department Plaintiff initially would speak to a secretary/operator, be briefly placed on hold, the call would then be transferred to someone else in the office who would say, "hold please"

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

and then no one would return to answer the call.

19. The City of San Jose Police Department does not have any information pertaining to the issuance of a CCW permit readily available on the departments' website. (*See* Exhibits 5 & 6 attached hereto and incorporated herein.)

20. The County of Santa Clara Sheriff's Office does not have any information pertaining to the issuance of a CCW permit available on the office's website. (*See* Exhibits 7 & 8 attached hereto and incorporated herein.)

21. On or about September 29, 2009, Plaintiff, through his attorney of record, contacted both the County of Santa Clara Sheriff's Office and the City of San Jose Police Department by letter regarding Defendant Santa Clara County's and Defendant City of San Jose's CCW application processes and issuance policies. (*See* Exhibit 1 attached hereto and incorporated herein.)

22. On or about September 29, 2009, Plaintiff, through his attorney, faxed a letter to the County of Santa Clara Sheriff's Office. (*See* Exhibit 1 attached hereto and incorporated herein.)

23. The following day, on or about September 30, 2009, Plaintiff through his attorney, mailed the same letter to both the City of San Jose Police Department and the County of Santa Clara Sheriff's Office. (*See* Exhibit 3 attached hereto and incorporated herein.)

24. Neither the City of San Jose Police Department nor the County of Santa Clara Sheriff's Office immediately responded to this letter.

25. On or about October 4, 2009, Plaintiff read and filled out the State of California, Department of Justice, Standard Application for a License to Carry a Concealed Weapon (CCW) ("State Application"). (*See* Exhibit 2 attached hereto and incorporated herein.)

26. Page two (2) of the State Application requires that the applicant "Fill out, read, and sign Sections 1 through 5, as directed." *Id*.

27. However, the State Application also states that "Sections 6, 7, and 8 must be completed in the presence of an official of the licensing agency." *Id*.

28. Further, the State Application states, "Review Section 7 and be prepared to answer these

**- 4 -**

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

1   questions orally. Do not write anything in Section 7 unless specifically directed to do so by

2   the licensing agency." *Id*.

3   29.   However, page three (3) of the State Application also calls for a "Witness Signature / Badge

4   Number." *Id*.

5   30.   Thus, the State Application implies that to even complete sections 1 through 5, the signature

6   of a peace officer is required.

7   31.   Moreover, the State Application makes clear that the application cannot be completed

8   without the assistance of an official of the licensing agency.

9   32.   For these reasons, in his letter to the City of San Jose Police Department and the County of

10  Santa Clara Sheriff's Office, dated September 29, 2009, Plaintiff requested that he be

11  provided with a date and time to meet with an official from either department to complete

12  sections 6, 7, and 8 of the State Application. (*See* Exhibit 1 attached hereto and incorporated

13  herein.)

14  33.   As stated above, this request was initially ignored by both the City of San Jose Police

15  Department and the County of Santa Clara Sheriff's Office.

16  34.   Consequently, Plaintiff filled out two (2) applications.

17  35.   On the first, Plaintiff filled out the application in full. (*See* Exhibit 2 attached hereto and

18  incorporated herein.)

19  36.   On the second, Plaintiff only filled out sections 1 through 5. *Id*.

20  37.   On or about October 6, 2009, Plaintiff, through his attorney of record, sent a second letter to

21  both the City of San Jose Police Department and the County of Santa Clara Sheriff's Office.

22  *Id*.

23  38.   On or about October 6, 2009, Plaintiff, through his attorney of record, faxed a copy of this

24  letter along with both completed versions of the State Application to the County of Santa

25  Clara Sheriff's Office. *Id*.

26  39.   Also, on or about October 6, 2009, Plaintiff, through his attorney of record, mailed a copy of

27  this letter and both completed versions of the State Application to both the City of San Jose

28

**- 5 -**

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

1   Police Department and the County of Santa Clara Sheriff's Office. (*See* Exhibit 4 attached

2   hereto and incorporated herein.)

3   40.   The original copies of both completed versions of the application were sent to the County of

4   Santa Clara Sheriff's Office.

5   41.   It was not until after receiving Plaintiff's letter dated October 6, 2009, along with both

6   completed versions of the State Application, that Plaintiff received any response from

7   Defendants.

8   42.   On or about October 9, 2009, after Plaintiff had submitted both completed versions of his

9   application to Defendants, Plaintiff's attorney received a packet from the Office of the

10   County Counsel, County of Santa Clara. (*See* Exhibit 9 attached hereto and incorporated

11   herein).

12   43.   This packet included:

13        a.    A letter from Cheryl A. Stevens, Lead Deputy County Counsel ("Ms. Stevens"), dated

14              October 8, 2009;

15        b.    A copy of the State Application;

16        c.    An Authorization to Release Information form;

17        d.    An Office of the Sheriff, County of Santa Clara, C.C.W. Firearms Proficiency form;

18        e.    A Santa Clara County Sheriff's Office CCW Class cover sheet;

19        f.    An Office of the Sheriff, County of Santa Clara, Hold Harmless Agreement;

20        g.    Procedural Information for Permits for the Carrying of Concealed Weapons;

21        h.    A Carry Concealed Weapons Outline for 4 Hour Class;

22   (*See* Exhibit 9 attached hereto and incorporated herein).

23   44.   However, noticeably absent from the packet were any instructions as to how to apply for a

24   CCW permit in Defendant County of Santa Clara.

25   45.   Also absent from the packet was any information pertaining to registration for the four (4)

26   hour carry concealed weapons class.

27   46.   Additionally, in his September 29, 2009, letter to Defendants, Plaintiff requested that he be

28

**- 6 -**

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief**
**And Demand For Jury Trial**

1    provided with a list of all current and past CCW permit holders during the Sheriff's tenure in

2    office, inclusive of all good cause data relied upon for issuance. (*See* Exhibit 1 attached

3    hereto and incorporated herein).

4    47.    Ms. Stevens stated in her response letter that, "The Sheriff's Office does not maintain a list of

5    all current permit holders including the data relied upon to grant the application." (*See*

6    Exhibit 9 attached hereto and incorporated herein.)

7    48.    Plaintiff finds it hard to believe that the Sheriff's Office does not maintain a list of all current

8    permit holders.

9    49.    Regardless, on or about October 15, 2009, Plaintiff received a letter from Sergeant Rick Sung

10    of the County of Santa Clara Sheriff's Office, dated October 13, 2009, informing him that his

11    CCW application had been denied. (*See* Exhibits 10 & 11 attached hereto and incorporated

12    herein).

13    50.    The purported reason for the denial was that Plaintiff resides in a city police jurisdiction. (*See*

14    Exhibit 11 attached hereto and incorporated herein).

15    51.    The letter further instructs that Plaintiff should therefore contact the San Jose Police

16    Department. *Id*.

17    52.    However, in Section 1, page 2, of the Procedural Information for Permits for the Carrying of

18    Concealed Weapons, received in the packet from Ms. Stevens, it states, "The *county* of

19    residence is the *only* place where you can apply for a standard concealed weapons permit."

20    (Emphasis added). (*See* Exhibit 9 attached hereto and incorporated herein.)

21    53.    Pursuant to Section 11, page 9, of the Procedural Information for Permits for the Carrying of

22    Concealed Weapons, Plaintiff, through his attorney, on or about October 27, 2009, faxed and

23    mailed a written appeal to Defendant Sheriff Laurie Smith in response to the denial of his

24    CCW application. (*See* Exhibit 12 attached hereto and incorporated herein.)

25    54.    Section 11, page 9, states, "You will be notified of the results of the appeal within a

26    reasonable time." (*See* Exhibit 9 attached hereto and incorporated herein.)

27    55.    On October 28, 2009, Plaintiff, through his attorney, received an e-mail response from Sgt.

28

- 7 -

1    Sung. (*See* Exhibit 25 attached hereto and incorporated herein.)

2    56.    In this e-mail, Sgt. Sung stated that he received Plaintiff's written appeal and that he wanted

3    to set up an interview with Plaintiff. *Id.*

4    57.    The interview was initially scheduled for November 5, 2009, but did not take place until

5    November 17, 2009, due to some confusion regarding the location of the interview. *Id.*

6    58.    Prior to the interview, Sgt. Sung did not request that Plaintiff bring any materials with him to

7    their meeting.

8    59.    The interview took place at the Santa Clara County Sheriff's Office Headquarters at 55 W.

9    Younger Ave., San Jose, California, and lasted for approximately one (1) hour.

10    60.    During this meeting, Sgt. Sung posed questions to Plaintiff, requested that he consent to a

11    criminal background check, and requested that he provide additional information, including

12    his personal medical records.

13    61.    Plaintiff provided Sgt. Sung with his consent for the Santa Clara County Sheriff's Office to

14    perform a background check and signed the corresponding requisite forms. (*See* Exhibit 27

15    attached hereto and incorporated herein.)

16    62.    However, because the Santa Clara County Sheriff's Office has the purported authority to

17    deny Plaintiff's CCW application without giving any reason whatsoever, Plaintiff declined to

18    provide any further information. *Id.*

19    63.    Plaintiff, through his attorney, conveyed his unwillingness to provide any additional

20    information to the Santa Clara County Sheriff's Office through a letter sent by e-mail to Sgt.

21    Sung on November 18, 2009. (*See* Exhibits 25 & 27 attached hereto and incorporated herein.)

22    64.    To date, the Santa Clara County Sheriff's Office has refused to provide Plaintiff with a final

23    determination as to the status of his CCW permit application.

24    65.    Defendants' failure to respond is in violation of C.P.C. § 12052.5.

25    66.    California Penal Code section 12052.5 requires the licensing authority to give written notice

26    to the applicant indicating if the license is approved or denied within ninety (90) days of the

27    initial application for a CCW permit or thirty (30) days after receipt of the applicant's

28

- 8 -

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

1      criminal background check from the Department of Justice, whichever is later.

2    67.   As stated above, prior to receiving the letter from the County of Santa Clara Sheriff's Office

3          dated October 13, 2009, Plaintiff had already contacted the San Jose Police Department and

4          had already applied for a CCW permit with the Department. (*See* Exhibits 1 & 2 attached

5          hereto and incorporated herein.)

6    68.   Plaintiff originally contacted the San Jose Police Department concerning the issuance and

7          application processes for a CCW permit on or about September 30, 2009. (*See* Exhibits 1 & 3

8          attached hereto and incorporated herein.)

9    69.   It was not until October 23, 2009, after Plaintiff had already submitted both versions of his

10         completed State Applications to the San Jose Police Department, that Plaintiff received any

11         response from the Department. (*See* Exhibits 2 & 13 attached hereto an incorporated herein.)

12   70.   On or about October 23, 2009, Plaintiff's attorney received an e-mail from Fred Mills of the

13         San Jose Police Department. (*See* Exhibit 13 attached hereto and incorporated herein.)

14   71.   Attached to this e-mail response were the following:

15         a.      A Public Records Act Request Response Letter;

16         b.      A copy of the State Application; and

17         c.      A copy of the San Jose Police Department 2008 Duty Manual.

18         (*See* Exhibit 13 attached hereto and incorporated herein.)

19   72.   In the original letter Plaintiff sent to the San Jose Police Department on or about September

20         30, 2009, Plaintiff requested that the Department "provide a list of all current and past CCW

21         permit holders since [the Chief's] tenure in office, inclusive of all good cause data relied

22         upon for issuance." (*See* Exhibit 1 attached hereto and incorporated herein.)

23   73.   In the response letter from Sergeant Mills received on or about October 23, 2009, Sgt. Mills

24         states that, "The Department has no record of issuing any civilian Concealed Firearm License

25         Permits after January 2004. All Concealed Firearm License Permits have been issued only to

26         retired San Jose Police Officers under the provisions of 12027 and 12027.1 of the California

27         Penal Code." (*See* Exhibit 14 attached hereto and incorporated herein.)

28

- 9 -

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

74.    Although the City of San Jose's issuance policy and procedures for CCW permits are set forth on pages 555 and 556 of the San Jose Police Department 2008 Duty Manual ("Duty Manual"), based on the Department's practice of denying all applications submitted by anyone other than retired San Jose Police Officers, it would be a futile exercise to follow the procedure outlined in the Duty Manual because even if Plaintiff were to do so, his application would still be denied. (*See* Exhibit 15 attached hereto and incorporated herein.)

75.    Regardless, on October 28, 2009, Plaintiff received a letter from Sergeant Steven J. McEwan of the San Jose Police Department, informing Plaintiff that his application for a CCW permit had been denied. (*See* Exhibit 26 attached hereto and incorporated herein.)

76.    The stated reason for the denial was "Good cause has not been established (12050 PC)." *Id*.

77.    This was one (1) of seven (7) options on the standard denial letter that Sgt. McEwan could have selected.

78.    These seven (7) options appeared as checkbox options on the letter Plaintiff received. (*See* Exhibit 26 attached hereto and incorporated herein.)

79.    The other options were as follows:

a.    Good moral character cannot be established (12050 PC);

b.    You are a person prohibited from possessing a firearm (12021.1 PC);

c.    You have not completed the minimum training as established by SJPD (12050 PC);

d.    Psychological clearance has not been obtained from the Department Psychologist (12054 PC);

e.    Application is incomplete/false statements provided (12051 PC);

f.    Applicant does not meet residence requirement (12050 PC).

(*See* Exhibit 26 attached hereto and incorporated herein.)

80.    Importantly, the language in the letter above the previously-listed checkbox items states, "Your application has been declined for *one or more* of the following reasons." (Emphasis added). *Id*.

81.    However, only the box preceding "Good cause has not been established (12050 PC)" was

**- 10 -**

_____

checked. *Id*.

82. Implicitly, Plaintiff has therefore satisfied all other potential "for-cause" disqualifications.

83. In other words, Plaintiff was not "disqualified," rather the Department merely chose not to issue him a CCW permit.

84. The letter also states that, "This decision is final and no appeal can be made." *Id*.

85. Defendants' obstructionist behavior and unreasonable policies regarding the processing and issuing of CCW permits have made it impossible for Plaintiff to obtain a CCW permit.

86. Such policies violate Plaintiff's rights under both the federal Constitution and the Constitution and laws of the State of California.

87. Defendant Chuck Reed is the Mayor of the City San Jose, and as such is responsible for executing and administering the laws, customs, practices, and policies of the City of San Jose complained of in this action.

88. Defendant Mayor Reed is an agent, servant, and/or employee of Defendant City of San Jose, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

89. Defendant Mayor Reed is therefore sued in both his individual and official capacities.

90. Defendant Rob Davis is the City of San Jose Chief of Police, and as such is responsible for executing and administering the laws, customs, practices, and policies of Defendant City of San Jose complained of in this action.

91. Defendant Rob Davis is an agent, servant, and/or employee of Defendant City of San Jose, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

92. Defendant Rob Davis is therefore sued in both his individual and official capacities.

93. Defendant Laurie Smith is the Santa Clara County Sheriff, and as such is responsible for executing and administering the laws, customs, practices, and policies of Defendant County of Santa Clara complained of in this action.

94. Defendant Laurie Smith is an agent, servant, and/or employee of Defendant County of Santa

- 11 -

Clara, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

95. Defendant Laurie Smith is therefore sued in both her individual and official capacities.

96. Defendant County of Santa Clara is a municipal corporation acting by and under the laws of the State of California.

97. Defendant City of San Jose is a municipal corporation acting by and under the laws of the State of California.

98. Defendant County of Santa Clara is a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

99. Defendant City of San Jose is a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

100. Defendant Edmund G. Brown is the State of California Attorney General, and is the chief law enforcement officer of the State whereby all other named Defendants report to him.

101. Defendant Edmund G. Brown is the State of California Attorney General, and as such is responsible for promulgation of the standardized CCW application and implementing specific criteria for the applicant to respond.

102. Defendant Edmund G. Brown is the State of California Attorney General, and as such is responsible for executing and administering the laws, customs, practices, and policies of the State of California, County of Santa Clara, and City of San Jose, complained of in this action.

103. Defendant Edmund G. Brown is an agent, servant, and/or employee of the State of California, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

104. Defendant Edmund G. Brown is therefore sued in his official capacity.

**INTRODUCTION AND SUMMARY OF AVERMENTS**

105. Plaintiff incorporates the above allegations as if set forth fully here.

106. Plaintiff brings this suit to challenge Defendants' enforcement and application of California

Penal Code Sections 12050, *et al.* ("C.P.C. § 12050, *et al.*")[1], 12031(b) ("C.P.C. § 12031(b)")[2], 12025 ("C.P.C. § 12025")[3], 12027 ("C.P.C. § 12027")[4], and 12027.1 ("C.P.C. § 12027.1")[5].

107.    Plaintiff also challenges Defendants' enforcement of the Law Enforcement Officers Safety Act (LEOSA), codified at 18 U.S.C. §§ 926B, 926C.[6]

108.    As applied and on their faces, each of the aforementioned code sections violate Plaintiff's constitutional rights under the Second, Fourteenth, and Fifth Amendments to the United States Constitution.

109.    The aforementioned code sections, with the exception of LEOSA, violate the Constitution and laws of the State of California.

110.    The Second Amendment to the United States Constitution provides:

> A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

111.    The Second Amendment guarantees the right of law-abiding citizens to publicly carry operational handguns for self-defense.

112.    The Second Amendment is incorporated to the states through the Fourteenth Amendment.

113.    The United States Supreme Court has held that the right to keep and bear arms is a fundamental right.

114.    Regulations infringing upon that right must meet heightened scrutiny.

---

[1] Attached hereto as Exhibit 16 and incorporated herein is a true and correct copy of C.P.C. § 12050, *et al.*

[2] Attached hereto as Exhibit 17 and incorporated herein is a true and correct copy of C.P.C. § 12031.

[3] Attached hereto as Exhibit 27 and incorporated herein is a true and correct copy of C.P.C. § 12025.

[4] Attached hereto as Exhibit 28 and incorporated herein is a true and correct copy of C.P.C. § 12027.

[5] Attached hereto as Exhibit 29 and incorporated herein is a true and correct copy of C.P.C. § 12027.1.

[6] Attached hereto as Exhibit 18 and incorporated herein is a true and correct copy of LEOSA.

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

115. Plaintiff concedes that states retain the ability to (a) prohibit the carrying of handguns in specific, narrowly-defined, sensitive locations; (b) prohibit the carrying of arms that are not within the scope of Second Amendment protection; and (c) disqualify specific, particularly dangerous, individuals (*e.g.*, felons convicted of violent crimes) from carrying handguns.

116. (a) States may not completely ban the carrying of handguns for self-defense;

(b) deny individuals the right to carry handguns in non-sensitive places;

(c) deprive individuals of the right to carry handguns in an arbitrary or capricious manner; or

(d) impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

117. Contrary to the view of some, it is neither Plaintiff's nor Plaintiff's counsel's goal to "return us to the Wild West" where everyone wears a "holster on the hip." (*See* Exhibit 19 attached hereto and incorporated herein.)

118. The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

119. By definition, criminals do not abide by the laws.

120. Therefore, gun control legislation has only a minimal effect on a violent criminal's ability to obtain and use a firearm.

121. Criminals who desire to have guns will get them and use them regardless of legislation enacted by Congress, state legislatures, and county or city officials.

122. It is true that gun control laws provide law enforcement with a mechanism though which they are able to arrest and prosecute criminals.

123. However, after-the-fact, such laws merely provide cold comfort to the families and friends of a loved one who fell victim to a violent crime.

124. It is also true that some gun control laws may have a beneficial deterrent effect.

125. These same positive effects can be achieved through less restrictive means than currently employed, thereby placing less of a burden on law-abiding citizens' ability to defend themselves and their families.

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

126.   The California Department of Justice defines "violent crimes" as including homicide, forcible rape, robbery, and aggravated assault. (*See* Exhibit 24 attached hereto and incorporated herein.)

127.   In 2008, roughly 185,173 Californians fell victim to violent crimes. (*See* Exhibit 22 attached hereto and incorporated herein.)

128.   That means roughly 504 per 100,000 Californians fall victim to violent crimes annually. *Id*.

129.   Current gun control legislation has had a statistically insignificant effect on violent crime.

130.   In Idaho, another Western state, only about 229 per 100,000 Idahoans fell victim to violent crimes in 2008. (*See* Exhibit 22 attached hereto and incorporated herein.)

131.   That means Californians are more than twice as likely to fall victim to a violent crime as compared to Idahoans.

132.   California and Idaho employ very different gun control tactics.

133.   Unlike California, the majority of the population of Idaho is armed. (*See* Exhibit 20 attached hereto and incorporated herein.)

134.   More than 50% of Idahoans are gun owners. *Id*.

135.   Moreover, unlike California, Idaho employs a "shall-issue" policy for the issuance of CCW permits.

136.   California employs a "may-issue" policy.

137.   Under the Idaho policy, and other states employing "shall issue" policies, only individuals who are disqualified for a legitimate reason, or reasons, such as being a convicted felon for committing a violent crime, are restricted from obtaining a concealed weapons permit.

138.   All other individuals who apply for CCW permits are granted the permits by right, subject to successful completion of a state-sanctioned gun safety course.

139.   Under California's current system, a county sheriff or city police chief can deny any applicant without giving, or having, any reason whatsoever. (*See* Exhibit 16 attached hereto and incorporated herein.)

140.   In Idaho and other similarly situated states, the lawfully armed society serves as a check on

- 15 -

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief**
**And Demand For Jury Trial**

the power and influence of the criminal element thereby reducing the incidence rate of violent crime.

141.    Wyoming has the largest percentage of private gun owners of any state in the Union. (*See* Exhibit 20 attached hereto and incorporated herein.)

142.    Wyoming also employs a "shall issue" policy for the issuance of concealed weapons permits.

143.    Wyoming has one of the lowest violent crime rates in the country at only about 232 per 100,000. (*See* Exhibit 22 attached hereto and incorporated herein.)

144.    Conversely, Washington, D.C. has the lowest private gun ownership rate in the county at roughly 3.8%. (*See* Exhibit 20 attached hereto and incorporated herein.)

145.    Also, until recently when the U.S. Supreme Court upheld the District Court's striking down of a number of the District's gun control laws in *Heller*, Washington, D.C. employed some of the strictest gun control laws in the country.

146.    Washington, D.C., with the lowest private gun ownership rate in the county, and formerly the strictest gun control laws, has the highest violent crime rate in the nation at nearly 1,500 per 100,000. (*See* Exhibit 22 attached hereto and incorporated herein.)

147.    Residents of Washington, D.C., with the lowest private gun ownership rate in the country, are more than five (5) times more likely to be the victim of a violent crime as compared to residents of Wyoming, with the highest private gun ownership rate in the country. (*See* Exhibits 20 & 22 attached hereto and incorporated herein.)

148.    In Vermont, one of the safest states in the country, "citizens can carry a firearm without getting permission ... without paying a fee ... or without going through any kind of government-imposed waiting period." (*See* Exhibit 21 attached hereto and incorporated herein.)

149.    Less than about 136 per 100,000 individuals fell victim to violent crime in Vermont in 2008. (*See* Exhibit 22 attached hereto and incorporated herein.)

150.    Recently Australia banned most private gun ownership nationwide. (*See* Exhibit 23 attached hereto and incorporated herein.)

- 16 -

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

151. Since Australia's ban went into effect in 1996, crime has risen dramatically in that country. *Id*.

152. After Australian lawmakers passed widespread gun bans, owners were forced to surrender about 650,000 weapons, which were later slated for destruction. *Id*.

153. In 2000, four (4) years after the ban took effect:

   a.      Nationwide homicides were up 3.2%;

   b.      Assaults were up 8.6%;

   c.      Armed robberies increased nearly 45%; and

   d.      In the Australian state of Victoria, gun homicides climbed a staggering 300%.

154. Interestingly, there was also a reported "dramatic increase" in home burglaries and assaults on the elderly. *Id*.

155. In the twenty five (25) years before the gun ban went into effect, crime in Australia had been steadily declining. *Id*.

156. In England the results were similar to those in Australia.

157. In 1997 lawmakers in England passed a sweeping gun ban. (*See* Exhibit 21 attached hereto and incorporated herein.)

158. According to BBC news, in the two (2) years following the ban, handgun crime in the United Kingdom rose by roughly 40%. *Id*.

159. When law-abiding citizens are disarmed, criminals have less to fear, and as a result violent crime increases.

160. In a 2004 report from the Gun Owners' Foundation (the "Foundation"), the Foundation found that in the United States, "[g]uns are used 2.5 million times a year in self-defense" which translates into 6,850 self-defense uses per day nationwide. (*See* Exhibit 21 attached hereto and incorporated herein.)

161. Armed citizens shoot and kill at least twice as many criminals per year as their law enforcement counterparts (roughly 1,527 to 606). *Id*.

162. These numbers prove that there is a substantial need for individuals to protect themselves.

- 17 -

---

163. Police protection alone is simply not adequate.

164. Armed citizens fending off their attackers do so in a safer manner than do law enforcement officers. *Id*.

165. Importantly, only about two percent (2%) of civilian shootings involved an innocent person mistakenly identified as a criminal. *Id*.

166. The error rate for law enforcement officers is a staggering eleven percent (11%), more than five (5) times as high as the error rate for average citizens. *Id*.

167. The Foundation (as well as the work of John Lott, notable economist) found that concealed carry laws have reduced murder and crime rates in the states that have enacted them. (*See* Exhibit 21 attached hereto and incorporated herein.)

168. Issuing concealed weapons permits does not increase the crime rate or gun violence.

169. Federal Bureau of Investigation (FBI) reports show that in the fifteen (15) years following the passage of Florida's "shall issue" concealed carry law in 1987, 800,000 CCW permits have been issued and the homicide rate in Florida, which in 1987 was much higher than the national average, fell 52% bringing it below the national average. (*See* Exhibit 21 attached hereto and incorporated herein.)

170. An armed law-abiding citizen is safer than a citizen living in a jurisdiction with strict gun control laws which prevent the citizen from defending himself or herself.

171. California's current "may issue" policy simply does not pass constitutional muster.

172. California's current system denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when confronted by an armed attacker.

173. Because Defendants refuse to issue CCW permits to law-abiding citizens, Californian's are faced with two (2) choices when it comes to the protection of themselves and their families.

174. First, they can succumb to an armed criminal and place themselves at the criminal's mercy.

175. Second, they can become criminals themselves by choosing to protect themselves and their families by carrying a concealed weapon without a permit.

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

176.    Therefore, Plaintiff, on behalf of himself, his family, and all law-abiding Californians, challenges the code sections named herein and set forth below.

177.    Defendants' application and enforcement of the code sections challenged herein significantly impairs Plaintiff's and others' ability to exercise their constitutionally guaranteed right to self-defense without the due process of law.

178.    Defendants' application and enforcement of the code sections challenged herein are therefore in violation of the Due Process clause of the Fourteenth Amendment.

179.    Accordingly, Plaintiff seeks declaratory and injunctive relief to invalidate Defendants' unconstitutional enforcement of C.P.C. §§ 12050, *et al.* and 12031(b), 12025, 12027, 12027.1, and LEOSA.

## GENERAL ALLEGATIONS

180.    Plaintiff incorporates the above allegations as if set forth fully here.

181.    The Second Amendment guarantees the right of law-abiding citizens to publicly carry operational handguns for self-defense.

182.    States may not completely ban the carrying of handguns for self-defense.

183.    States may not deny individuals the right to carry handguns in non-sensitive places.

184.    States may not deprive individuals of the right to carry handguns in an arbitrary or capricious manner.

185.    States may not impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

186.    The Fourteenth Amendment to the United States Constitution provides in part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

187.    All rights and privileges guaranteed to the people by the Second Amendment extend through the Fourteenth Amendment so as to apply to against state and local governmental entities, including Defendants.

/

**- 19 -**

188.   But for Defendants' enforcement of the code sections complained of herein, Plaintiff would be approved for a CCW permit.

**FIRST CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF C.P.C. § 12025**
**Violation of the Second Amendment Right to Keep and Bear Arms**

189.   Plaintiff incorporates the above allegations as if set forth fully here.

190.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

191.   California Penal Code section 12025 prohibits individuals in California from carrying a concealed weapon:

a.     within any vehicle under his or her control or direction;

b.     on his or her person;

c.     within any vehicle in which he or she is an occupant.

192.   The Second Amendment, incorporated through the Fourteenth Amendment, guarantees the right of law-abiding citizens to publically carry operational handguns for self-defense.

193.   Defendants' continued enforcement of C.P.C. § 12025 under color of state law impermissibly infringes upon Plaintiff's constitutional rights, including his right to keep and bear arms as guaranteed by the Second Amendment.

194.   As a direct and proximate result of Defendants' violation of Plaintiff's Second Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**SECOND CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF C.P.C. § 12050,** *et al.*
**Violation of the Second Amendment Right to Keep and Bear Arms**

195.   Plaintiff incorporates the above allegations as if set forth fully here.

196.   California Penal Code section 12050, *et al.* provides sheriffs and police chiefs with absolute and unbridled discretion regarding the issuance of CCW permits when the applicant is anyone other than a retired peace officer.

197.   This is in contrast to the thirty seven (37) states that employ a "shall-issue" policy under

**- 20 -**

_____

1    which a CCW will be granted to all applicants who meet certain criteria.[7]

2    198.    In a shall-issue jurisdiction, the granting authority has no discretion in the granting of a CCW

3    permit.

4    199.    The right to keep and bear arms is a fundamental right guaranteed by the United States

5    Constitution.

6    200.    Regulations infringing upon a fundamental right must meet heightened scrutiny.

7    201.    California Penal Code section 12050, *et al.* cannot pass constitutional muster under either

8    intermediate or strict scrutiny review because of the unbridled discretion left to sheriffs and

9    police chiefs regarding an individual's Second Amendment right to keep and bear arms.

10    202.    Defendants' continued enforcement of C.P.C. § 12050, *et al.* under color of state law

11    impermissibly infringes upon Plaintiff's constitutional rights, including his right to keep and

12    bear arms as guaranteed by the Second Amendment.

13    203.    As a direct and proximate result of Defendants' violation of Plaintiff's Second Amendment

14    rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and

15    injunctive relief under 42 U.S.C. §§ 2201 and 2202.

16
17    **THIRD CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF C.P.C. § 12050, *et al.***
**Violation of the Equal Protection clause of the Fourteenth Amendment**

18    204.    Plaintiff incorporates the above allegations as if set forth fully here.

19    205.    California Penal Code section 12050.2 requires that a county sheriff and chief of a municipal

20    police department publish and make available a written policy regarding the application and

21    issuance process to obtain a license to carry a concealed firearm.

22    206.    Defendant City of San Jose and Defendant Police Chief Davis do not have a policy that is

23    readily available to the public.

24    207.    Defendant City of San Jose and Defendant Police Chief Davis do not have a policy readily

25

26    [7] The 37 states currently employing a "shall issue" policy are as follows: Alaska, Arizona,
Arkansas, Colorado, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine,

27    Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New
Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South

28    Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wyoming.

- 21 -

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

1   available on the Department's website.

2   208.   Defendant City of San Jose and Defendant Police Chief Davis employ obstructionist behavior
3   when an individual attempts to receive a copy of the purported policy.

4   209.   Defendant City of San Jose and Defendant Police Chief Davis only issue CCW permits to
5   retired San Jose Police Officers.

6   210.   Defendant County of Santa Clara and Defendant Sheriff Smith do not have a policy that is
7   readily available to the public.

8   211.   Defendant County of Santa Clara and Defendant Sheriff Smith do not have a policy available
9   on either the County's website or the Sheriff's website.

10   212.   Defendant County of Santa Clara and Defendant Sheriff Smith employ obstructionist
11   behavior when an individual attempts to receive a copy of the purported policy.

12   213.   Defendant County of Santa Clara and Defendant Sheriff Smith only issue CCW permits to
13   retired California peace officers, and occasionally to individuals who contribute to the
14   Sheriff's re-election campaign, or otherwise have connections to law enforcement officers.

15   214.   Defendants issue CCW permits to retired law enforcement officers, effectively on a "shall
16   issue" basis.

17   215.   When it comes to self-defense, providing retired peace officers with superior rights to those
18   of ordinary law-abiding citizens does not further either an important or compelling state
19   interest.

20   216.   Statistically speaking, a retired peace officer is less likely to be a victim of a violent crime as
21   compared to an average citizen.

22   217.   Active and retired peace officers are statistically more likely to be involved in domestic
23   violence when compared to average citizens.

24   218.   Active and retired peace officers are statistically more likely to commit suicide when
25   compared to average citizens.

26   219.   When a state statute burdens a fundamental right or targets a suspect class, that statute
27   receives heightened scrutiny under the Equal Protection clause of the Fourteenth

28

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

Amendment.

220. Regulations aimed at the right to keep and bear arms for self-defense are subject to heightened scrutiny.

221. In *Silveira v. Lockyer*, a case pre-dating *Heller*, the Ninth Circuit held that a state statue banning the sale or transfer of assault weapons in the State of California, but which also provided an exemption for retired peace officers, violated the Equal Protection clause of the Fourteenth Amendment.

222. There, applying only rational basis review, the court could not find "*any* hypothetical rational basis for the exemption."

223. When it comes to the issuance of CCW permits for the purpose of self-defense, Defendants' disparate treatment of retired peace officers and ordinary law-abiding citizens cannot pass constitutional muster when reviewed under heightened scrutiny.

224. When it comes to the issuance of CCW permits for the purpose of self-defense, Defendants' disparate treatment of retired peace officers and ordinary law-abiding citizens cannot pass constitutional muster when reviewed under rational basis review.

225. Defendants' policy pertaining to the issuance of CCW permits is in violation of the Equal Protection clause of the Fourteenth Amendment.

226. Defendants' continued application of C.P.C. § 12050, *et al.* under color of state law impermissibly infringes upon Plaintiff's constitutional rights guaranteed by the Fourteenth Amendment.

227. As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**FOURTH CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF C.P.C. § 12027**
**Violation of the Equal Protection clause of the Fourteenth Amendment**

228. Plaintiff incorporates the above allegations as if set forth fully here.

229. California Penal Code section 12027 provides an exemption to C.P.C. § 12025 for active,

- 23 -

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief**
**And Demand For Jury Trial**

honorably retired, and other duly appointed peace officers.

230.    California Penal Code section 12025 essentially creates four classes of people: (1) active peace officers; (2) honorably retired peace officers; (3) other duly appointed peace officers; and (4) all others.

231.    When it comes to self-defense, providing retired peace officers with superior rights to those of ordinary law-abiding citizens does not further either an important or compelling state interest.

232.    Allowing an active police officer who is not conducting official law enforcement activities to carry a concealed firearm does not further either an important or compelling governmental interest.

233.    As such, C.P.C. § 12027 violates the Equal Protection clause of the Fourteenth Amendment.

234.    Defendants' continued enforcement of C.P.C. § 12027 under color of state law impermissibly infringes upon Plaintiff's constitutional rights guaranteed by the Fourteenth Amendment.

235.    As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**FIFTH CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF C.P.C. § 12027.1**
**Violation of the Equal Protection clause of the Fourteenth Amendment**

236.    Plaintiff incorporates the above allegations as if set forth fully here.

237.    California Penal Code section 12027.1 provides for a scheme that allows retired peace officers to lawfully carry concealed weapons without applying for or being issued CCW permits.

238.    The section provides for either an "endorsement" or "identification certificate" which allows the retired officer to lawfully carry a concealed firearm without going through the CCW permit application process required of all other citizens.

239.    An identification certificate authorizing the officer to carry a concealed and loaded firearm or an endorsement may be revoked only after a hearing.

**- 24 -**

240. While a sheriff or police chief may deny a law-abiding citizen, without giving any reason whatsoever, from exercising the right to even carry a concealed weapon in the first place, a retired peace officer is entitled to a hearing before he or she has that right taken from him or her.

241. When it comes to self-defense, providing retired peace officers with superior rights to those of ordinary law-abiding citizens does not further either an important or compelling state interest.

242. As such, C.P.C. § 12027.1 violates the Equal Protection clause of the Fourteenth Amendment.

243. Defendants' continued enforcement of C.P.C. § 12027.1 under color of state law impermissibly infringes upon Plaintiff's constitutional rights guaranteed by the Fourteenth Amendment.

244. As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

## SIXTH CLAIM FOR RELIEF:
### UNCONSTITUTIONALITY OF C.P.C. § 12031(b)
Violation of the Equal Protection clause of the Fourteenth Amendment

245. Plaintiff incorporates the above allegations as if set forth fully here.

246. California Penal Code section 12031(a)(1) prohibits the carrying of a loaded firearm on one's person or in one's vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory in the State of California.

247. California Penal Code section 12031(b) provides an exemption to C.P.C. § 12031(a)(1) for active and honorably retired peace officers.

248. Essentially, C.P.C. § 12031(b) creates three (3) classes of people: (1) active peace officers; (2) honorably retired peace officers; and (3) all others.

249. When it comes to self-defense, providing retired peace officers with superior rights to those of ordinary law-abiding citizens does not further either an important or compelling state

- 25 -

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

interest.

250. Allowing an active duty officer who is not conducting official law enforcement activities to carry a concealed firearm does not further either an important or compelling governmental interest.

251. As such, C.P.C. § 12031(b) violates the Equal Protection clause of the Fourteenth Amendment.

252. Defendants continued enforcement of C.P.C. § 12031(b) under color of state law impermissibly infringes upon Plaintiff's constitutional rights guaranteed by the Fourteenth Amendment.

253. As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**SEVENTH CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF LEOSA**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**

254. Plaintiff incorporates the above allegations as if set forth fully here.

255. The Law Enforcement Officers Safety Act ("LEOSA"), codified at 18 U.S.C. §§ 926B, 926C, allows a "qualified law enforcement officer" or a "qualified retired law enforcement officer" who meets specified criteria to carry a concealed firearm anywhere in the United States, notwithstanding most other state and local laws that restrict the possession of concealed weapons.

256. LEOSA essentially creates three (3) classes of people: (1) qualified law enforcement officers; (2) qualified retired law enforcement officers; and (3) all others.

257. When it comes to self-defense, providing qualified retired law enforcement officers with superior rights to those of ordinary law-abiding citizens does not further either an important or compelling governmental interest.

258. When it comes to self-defense, providing qualified law enforcement officers, who are not conducting official law enforcement activities, with superior rights to those of ordinary law-

**- 26 -**

1    abiding citizens does not further either an important or compelling governmental interest.

2    259.    As such, LEOSA violates the Equal Protection clause of the Fourteenth Amendment.

3    260.    Defendants continued enforcement of LEOSA under color of state law impermissibly

4    infringes upon Plaintiff's constitutional rights guaranteed by the Fourteenth Amendment.

5    261.    As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth

6    Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to

7    declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**EIGHTH CLAIM FOR RELIEF:**
**INVALIDITY OF SECTION C.P.C. §§ 12050, *et al.* & 12025**
**Violation of the Constitution and laws of the State of California**

10    262.    Plaintiff incorporates the above allegations as if set forth fully here.

11    263.    California Penal Code sections 12050, *et al.* & 12025 violate the Constitution and laws of the

12    State of California.

13    264.    California law and public policy authorize law-abiding Californians to use firearms in self-

14    defense and for the defense of others in their homes and businesses.

15    265.    Under California law, government agencies and law enforcement officers have no duty to

16    protect individual citizens from harm.

17    266.    In *Zelig*, the California Supreme Court unanimously held that, "the general rule is that

18    although the government may assume responsibility for providing adequate police protection

19    against third party violence, this does not create a legal duty that normally will give rise to

20    civil liability."

21    267.    It is the responsibility of individual citizens to protect themselves from violence.

22    268.    The California Constitution guarantees certain inalienable rights, including the right to

23    defend one's life, liberty, and property.

24    269.    California Penal Code 12026(b) guarantees the right of law-abiding responsible adult citizens

25    to acquire and possess handguns within their own homes and offices for the purpose of

26    exercising their constitutional right to self-defense.

27    270.    Implicit in C.P.C. § 12026(b), is the right to possess, carry, use, and discharge a handgun for

28

**- 27 -**

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief**
**And Demand For Jury Trial**

the defense of self, family, home and/or business, if and when necessary.

271. Defendants' unconstitutional application and enforcement of C.P.C. §§ 12050, *et al.* & 12025 prevent Plaintiff and others from lawfully possessing, carrying, using, and discharging a firearm for self-defense and the defense of others if and when necessary.

272. Additionally, C.P.C. § 12050, *et al.* unconstitutionally provides sheriffs and police chiefs with absolute and unbridled discretion regarding the issuance of CCW permits.

273. Thus, C.P.C. §§ 12050, *et al.* & 12025 are in violation of the Constitution and laws of the State of California.

274. Defendants' continued enforcement of C.P.C. §§ 12050, *et al.* & 12025 under color of state law impermissibly infringes upon Plaintiff's rights guaranteed by the Constitution and laws of the State of California.

275. As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief.

**NINTH CLAIM FOR RELIEF:**
**INVALIDITY OF SECTION C.P.C. § 12050, *et al.***
**Violation of Plaintiff's Right to Travel Guaranteed by both the**
**United States Constitution and the Fourteenth Amendment**

276. Plaintiff incorporates the above allegations as if set forth fully here.

277. The United States Constitution guarantees citizens the right to travel.

278. Plaintiff not only wishes to protect himself by carrying a concealed weapon within the State of California, but also wishes to avail himself of that same protection when he travels.

279. Arizona, Idaho, Indiana, Kentucky, Missouri, Montana, Oklahoma, South Dakota, Tennessee, Texas, and Utah all honor CCW permits issued by the State of California.

280. But for Defendants' denial of Plaintiff's CCW application, Plaintiff could travel to these states and lawfully protect himself with a concealed weapon.

281. However, because of Defendants' denial of his application, Plaintiff is deterred from traveling interstate because he is not able to adequately protect himself.

282. Thus, C.P.C. § 12050, *et al.* is in violation of the United States Constitution.

283. Defendants' continued enforcement of C.P.C. § 12050, *et al.* under color of state law

1    impermissibly infringes upon Plaintiff's rights guaranteed by the Constitution and the

2    Fourteenth Amendment.

3    284.    As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has

4    suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief.

5    **TENTH CLAIM FOR RELIEF:**
**INVALIDITY OF SECTION C.P.C. § 12050, *et al.* & 12025**

6    **Violation of the Due Process Clause of the Fourteenth Amendment**

7    285.    Plaintiff incorporates the above allegations as if set forth fully here.

8    286.    The Second Amendment to the United States Constitution guarantees citizens the right to

9    keep and bear arms for the purpose of self-defense.

10   287.    The Constitution and laws of the State of California authorize law-abiding Californians to use

11   firearms in self-defense and for the defense of others in their homes and businesses.

12   288.    Defendants' application and enforcement of the code sections challenged herein significantly

13   impairs Plaintiff's, and others, ability to exercise their constitutionally guaranteed right to

14   self-defense without the due process of law.

15   289.    Defendants' application and enforcement of the code sections challenged herein are therefore

16   in violation of the Due Process clause of the Fourteenth Amendment.

17   290.    Defendants continued enforcement of the code sections challenged herein under color of state

18   law impermissibly infringes upon Plaintiff's constitutional rights guaranteed by the

19   Fourteenth Amendment.

20   291.    As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth

21   Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to

22   declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

23   **DECLARATORY JUDGMENT AVERMENTS**

24   292.    Plaintiff incorporates the above allegations as if set forth fully here.

25   293.    There is an actual and present controversy between the parities hereto.

26   294.    Plaintiff contends that Defendants' enforcement of C.P.C. §§ 12050, *et al.* and 12031(b),

27   12025, 12027, 12027.1, and LEOSA, violate his constitutional rights.

28

**- 29 -**

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief**
**And Demand For Jury Trial**

295. However, Defendants continue to enforce these sections.

296. A declaration by this Court enjoining Defendants from enforcing C.P.C. §§ 12050, *et al.* and 12031(b), 12025, 12027, 12027.1, and LEOSA, would resolve the controversy between the parties.

**INJUNCTIVE RELIEF AVERMENTS**

297. Plaintiff incorporates the above allegations as if set forth fully here.

298. If an injunction does not issue enjoining Defendants from enforcing C.P.C. §§ 12050, *et al.* and 12031(b), 12025, 12027, 12027.1, and LEOSA, Plaintiff will continue to be subject to substantial and immediate irreparable injury.

299. Plaintiff is presently and continuously injured by Defendants' enforcement of these sections.

300. If not enjoined by this Court, Defendants will continue to unconstitutionally enforce C.P.C. §§ 12050, *et al.* and 12031(b), 12025, 12027, 12027.1, and LEOSA.

301. Further, Plaintiff does not have an adequate remedy at law.

302. Damages are indeterminate and/or unascertainable and any remedy at law would not fully redress the harm suffered by Plaintiff.

303. Plaintiff's right to protect himself and others cannot be replaced by money.

304. Ultimately, Defendants' continued unconstitutional infringement of Plaintiff's constitutional right could result in severe bodily injury or even death to Plaintiff.

305. Further, enjoining Defendants' enforcement of these code sections is in the public interest.

306. Other law-abiding citizens similarly situated to Plaintiff are also injured by Defendants unconstitutional enforcement of these sections.

307. Accordingly, injunctive relief is appropriate.

**DEMAND FOR JURY TRIAL**

308. Plaintiff demands a trial by jury.

**REQUEST FOR ATTORNEYS' FEES**

309. If Plaintiff is the prevailing party, Plaintiff respectfully requests remedies available pursuant to 42 U.S.C. § 1983 and for an award of reasonable attorneys' fees, costs, and expenses

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5, and/or any other applicable rule or statute.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendants as follows:

1.) A declaration that California Penal Code section 12050 *et al.* violates the Second Amendment to the United States Constitution.

2.) A declaration that California Penal Code section 12025 violates the Second Amendment to the United States Constitution.

3.) A declaration that Defendants' enforcement of California Penal Code section 12050 *et al.* violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

4.) A declaration that California Penal Code section 12031(b) violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

5.) A declaration that California Penal Code section 12027 violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

6.) A declaration that California Penal Code section 12027.1 violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

7.) A declaration that Defendants' enforcement of the Law Enforcement Officers Safety Act violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

8.) A declaration C.P.C. § 12050, *et al.* violates the Constitution and laws of the State of California.

9.) A declaration C.P.C. § 12025 violates the Constitution and laws of the State of California.

10.) A declaration that Defendants application and enforcement of C.P.C. § 12050, *et al.* violates Plaintiff's right to travel guaranteed by both Article IV, Section 2 of the United States

**- 31 -**

Constitution and the Privileges or Immunities clause of the Fourteenth Amendment.

11.) A declaration that Defendants application and enforcement of C.P.C. §§ 12050, *et al.* and 12025 violate Plaintiff's right to Due Process guaranteed by the Fourteenth Amendment to the United States Constitution.

12.) An injunction permanently enjoining Defendants from enforcing C.P.C. §§ 12050, *et al.* and 12031(b), 12025, 12027, 12027.1, and LEOSA.

13.) For remedies available pursuant to 42 U.S.C. § 1983 and for an award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5, and/or any other applicable rule or statute.

14.) For compensatory damages according to proof.

15.) For special damages according to proof.

16.) Such other relief as this Court deems just and equitable, including general and specific damages.


Dated: April 15, 2010                    Respectfully Submitted,

                                         THE LAW OFFICES OF GARY W. GORSKI
                                          /s/ Gary W. Gorski
                                         Gary W. Gorski
                                         Attorney for Plaintiff

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**